UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| **RICHARD RAGSDALE,** | } |
| Plaintiff, | } |
| v. | } Case No.: 5:19-cv-00812-ACA |
| **SOCIAL SECURITY ADMINISTRATION, COMMISSIONER,** | } |
| Defendant. | } |

## MEMORANDUM OPINION

Plaintiff Richard Ragsdale appeals the decision of the Commissioner of Social Security denying his claim for supplemental security income. Based on the court's review of the administrative record and the parties' briefs, the court **WILL AFFIRM** the Commissioner's decision.

### I. PROCEDURAL HISTORY

Mr. Ragsdale applied for supplemental security income, alleging that his disability began on December 1, 2015. (R. at 165–72). The Commissioner initially denied Mr. Ragsdale's claim (*id.* at 62), and Mr. Ragsdale requested a hearing before an Administrative Law Judge ("ALJ") (*id.* at 73–74). After holding a hearing (*id.* at 35–54), the ALJ issued an unfavorable decision (*id.* at 19–28). The Appeals Council

denied Mr. Ragsdale's request for review (*id.* at 1), making the Commissioner's decision final and ripe for the court's judicial review, 42 U.S.C § 1383(c)(3).

## II.  STANDARD OF REVIEW

The court's role in reviewing claims brought under the Social Security Act is a narrow one.  The court "must determine whether the Commissioner's decision is supported by substantial evidence and based on proper legal standards."  *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (quotation marks omitted).  "Under the substantial evidence standard, this court will affirm the ALJ's decision if there exists such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015) (quotation marks omitted).  The court may not "decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [ALJ]."  *Winschel*, 631 F.3d at 1178 (quotation marks omitted).  The court must affirm "[e]ven if the evidence preponderates against the Commissioner's findings."  *Crawford v. Comm'r of Soc. Sec.,* 363 F.3d 1155, 1158–59 (11th Cir. 2004) (quotation marks omitted).

Despite the deferential standard for review of claims, the court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence."  *Henry*, 802 F.3d at 1267 (quotation marks omitted).  Moreover, the court must reverse the Commissioner's decision if the ALJ

2

does not apply the correct legal standards. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145–46 (11th Cir. 1991).

## III. ALJ'S DECISION

To determine whether an individual is disabled, an ALJ follows a five-step sequential evaluation process. The ALJ considers:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a residual functional capacity ("RFC") assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's RFC, age, education, and work experience.

*Winschel*, 631 F.3d at 1178.

Here, the ALJ determined that Mr. Ragsdale had not engaged in substantial gainful activity since his application date. (R. at 21). The ALJ found that Mr. Ragsdale's chronic obstructive pulmonary disease ("COPD") is a severe impairment, but that his hypertension, gastritis and duodenitis, hypothyroidism, and bilateral wrist pain are not severe impairments. (*Id.* at 21–22). Further, the ALJ found that Mr. Ragsdale's alleged auditory and visual hallucinations, feeling of being overwhelmed in crowds, and forgetfulness are not medically determinable impairments due to a lack of objective evidence. (*Id.* at 22). The ALJ then concluded that Mr. Ragsdale does not suffer from an impairment or combination of

impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1. (*Id.*).

After considering the evidence of record, the ALJ determined that Mr. Ragsdale had the residual functional capacity to perform work at all exertional levels, but that he "must avoid concentrated exposure to fumes, odors, dusts, gases, and poor ventilation." (R. at 22–23). Based on this residual functional capacity and the testimony of a vocational expert, the ALJ found that jobs existed in the national economy that Mr. Ragsdale could perform at the medium and light exertional levels, including hand packager, assembler, and inspector. (*Id.* at 27–28). Accordingly, the ALJ determined that Mr. Ragsdale has not been under a disability, as defined in the Social Security Act, since he filed out his application. (*Id.* at 28).

## IV. DISCUSSION

Mr. Ragsdale argues that the ALJ failed to properly apply the pain standard because the medical evidence is consistent with his allegations of debilitating symptoms and limitations. (Doc. 9 at 5, 7–8). He challenges the ALJ's "selective" reliance on certain medical records as well as his consideration of Mr. Ragsdale's testimony about his activities of daily living. (*Id.* at 10–12, 14–15).

Under Eleventh Circuit precedent, a claimant attempting to establish disability through testimony of pain or other subjective symptoms must show evidence of an underlying medical condition and either (1) "objective medical evidence that

4

confirms the severity of the alleged pain arising from that condition" or (2) "that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (quotation marks omitted). The Commissioner does not dispute that Mr. Ragsdale presented evidence of COPD as an underlying medical condition. (*See* Doc. 11 at 6–19). Thus, the only question before the court is whether substantial evidence supports the ALJ's determination that Mr. Ragsdale's "statements concerning the intensity, persistence and limiting effects of [his] symptoms are not entirely consistent with the medical evidence and other evidence in the record." (R. at 23).

Substantial evidence supports the ALJ's credibility determination. Although Mr. Ragsdale challenges the ALJ's "selective" discussion of the medical evidence, "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision . . . , is not a broad rejection which is not enough to enable [this court] to conclude that [the ALJ] considered [his] medical condition as a whole." *Dyer*, 395 F.3d at 1211 (some alterations added). The ALJ's recitation of the medical evidence of record was thorough and accurate. (*See* R. at 24–25). The only evidence Mr. Ragsdale describes that the ALJ did not set out in his decision were three medical reports in which the examiner transcribed Mr. Ragsdale's own reports of his symptoms and medical history. (*See* Doc. 9 at 9;

5

R. at 377, 382, 412). The question before the ALJ was not whether Mr. Ragsdale's own description of his symptoms was consistent, but whether "objective medical evidence . . . confirms the severity of the alleged pain arising from that condition" or "the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain." *Dyer*, 395 F.3d at 1210. Here, the record shows that the ALJ considered Mr. Ragsdale's condition as a whole in making that determination.

Mr. Ragsdale also challenges the ALJ's consideration of the results of a spirometry test. (Doc. 9 at 11–12). In November 2017, Mr. Ragsdale took a spirometry test, which found that he had a "[s]evere airway obstruction" and was at a "very high" risk of COPD. (R. at 424). The ALJ acknowledged this report, but noted that certain abnormal values reported within the test were "not consistent with the normal respiratory examinations and 'asymptomatic' COPD earlier in November 2017." (*Id.*). The record shows that two days before the spirometry test, Mr. Ragsdale made an office visit to follow up on several medical issues including his COPD, at which time a physical examination of his respiratory system was normal, with the examiner noting that his COPD was asymptomatic. (R. at 418, 421–22).

The ALJ's decision shows that he was aware of and considered the results of the spirometry test. This court may not reweigh the evidence or substitute its

judgment for the ALJ, even if the evidence preponderates against the ALJ's finding. *Winschel*, 631 F.3d at 1178; *Crawford,* 363 F.3d at 1158–59. This court may not second guess the ALJ's assignment of weight to the spirometry test results.

With respect to Mr. Ragsdale's description of his activities of daily living, he testified that, for extra income, he occasionally mows lawns using a riding mower. (R. at 37–39). He can do that for up to thirty minutes before needing to take a break, and sometimes it takes him more than one day to complete one yard. (*Id.* at 39, 46). He also testified that his hobbies including fishing, but as of the hearing in January 2018 (*id.* at 33), he had not been able to go fishing since the previous summer (*id.* at 43–44). A friend of Mr. Ragsdale filled out a function report in which he stated that Mr. Ragsdale could fish "well" during the summer, but that he had not done so as often or for as long since his condition began. (*Id.* at 241, 245).

The ALJ stated that "[d]espite his COPD, the claimant has been able to engage in activities including mowing lawns for family and going fishing." (R. at 25). Mr. Ragsdale contends that this statement is an inaccurate description of his hearing testimony because he also testified that he mows lawns only a few days per month and he had not been able to go fishing that year. (Doc. 9 at 14–15). He argues that Eleventh Circuit caselaw prohibits an ALJ from denying a claim based on participation in everyday activities of short duration. (*Id.* at 14) (citing *Lewis v. Callahan*, 125 F.3d 1436, 1441 (11th Cir. 1997) ("Nor do we believe that

7

participation in everyday activities of short duration, such as housework or fishing, disqualifies a claimant from disability or is inconsistent with the limitations recommended by [the claimant]'s treating physicians.")).

Contrary to Mr. Ragsdale's contention, the ALJ did not deny his claim based on his participation in everyday activities of short duration. First, the hearing testimony indicates that Mr. Ragsdale had gone fishing during the previous summer (summer 2017), and was able to mow lawns occasionally. (*See* R. at 43–44). Second, the ALJ relied on more than just Mr. Ragsdale's testimony about his daily activities to find that his description of the intensity, persistence, and limiting effects of his symptoms were not consistent with the record as a whole.[1] (*See* R. at 24–25). Substantial evidence supports the ALJ's credibility determination and his application of the pain standard.

## III. CONCLUSION

Substantial evidence supports the ALJ's denial of Mr. Ragsdale's application for supplemental security income, and this court **WILL AFFIRM** the Commissioner's decision.

---

[1] Mr. Ragsdale's final argument is that under the Medical Vocational Guidelines, his age, limited education, and past relevant work in connection with a limitation to a sedentary level of exertion mandate a finding of disability. (Doc. 9 at 13–14). Because the court finds that substantial evidence supports the ALJ's residual functional capacity determination—meaning that Mr. Ragsdale is not limited to sedentary work—the court need not reach that argument.

The court will enter a separate order consistent with this memorandum opinion.

**DONE** and **ORDERED** this February 18, 2020.

_____
**ANNEMARIE CARNEY AXON**
UNITED STATES DISTRICT JUDGE